682 P.2d 431

STATE of Arizona, ex rel. J. Michael LOW, Director of Insurance, Plaintiff-Appellant,

David G. Yates, Conservator of William D. Yates, a minor; Lois J. Agnew; Bret A. Batchelor, Conservator of Lisa Renee Batchelor, a minor; Richard H. and Sharon Hardman; Nancy G. Corey, individually, and as guardian of Karen M. Corey; Rosalie and Victor Yurk; David H. and Susan Smith; Lloyd and Ruth Bingham; and Henry O. and Nellie T. Sanchez; John and Virginia Musa; Glenda Worsham, individually and on behalf of Chanita Lynn Engleke and Choya Lin Worsham, her minor daughter and son; Richard Todd, a minor, by and through his mother, Kathy A. Todd Hansen; Darrell and Geanna Smith, surviving parents of Kent E. Smith, Claimants-Appellants,

v.

IMPERIAL INSURANCE COMPANY, a California corporation, By and Through the INSURANCE COMMISSIONER OF the STATE OF CALIFORNIA, as Domiciliary Liquidator of Imperial Insurance Company, Defendant-Appellee.

Nos. 1 CA–CIV 5829, 1 CA–CIV 5909.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 26, 1984.

Review Denied May 3, 1984.

McGowan & Johnson by Rodney G. Johnson, Phoenix, for plaintiff-appellant State of Ariz. ex rel. Low.

Hofmann, Salcito, Stevens & Myers, P.A. by Leroy W. Hofmann, Phoenix, for claimants-appellants.

G. David Gage Ltd., P.C. by G. David Gage, Phoenix, for claimants-appellants and claimants-appellants Yurk.

Robbins & Green, P.A. by Phillip A. Robbins, Phoenix, for claimants-appellants Corey.

Nicholas C. Guttilla, P.C. by Nicholas C. Guttilla, Phoenix, for defendant-appellee.

Lewis & Roca by Paul G. Ulrich, Merton Marks, Phoenix, and Charles W. Havens, III, Richard J. Brooks, Franklin W. Nutter, Washington, D.C., for amicus curiae Reinsurance Ass'n of America.

## OPINION

CONTRERAS, Judge.

This case presents questions of first impression in Arizona with respect to the administration of reinsurance proceeds. Specifically, we are called upon to determine whether (1) reinsurance proceeds payable to an insolvent California insurer by reason of claims arising in Arizona are general assets vested solely in the domiciliary receiver in California and (2) whether Arizona claimants who have filed their claims with the California domiciliary receiver are bound by the actions taken by such domiciliary receiver and the California courts. We answer both questions in the affirmative.

## I. REINSURANCE AND STATE REGULATION.

In order to better understand our determination we set forth a brief discussion of reinsurance and its interrelation to statutory regulation by the state. Simply stated, reinsurance is the insurance of insurance companies.[1] A succinct definitive discussion of "reinsurance" was set forth by

---

1. We refer the reader desiring more familiarity with reinsurance concepts to Thompson, *Critical Issues of the Eighties: How Trends in Reinsurance Will Affect Legal, Legislative, and Regulatory Actions,* 16 Forum 1038 (1981); Sheffey, *Reinsurance Intermediaries: Their Relationship* to Reinsured and Reinsurer, 16 Forum 922 (1981); 13A J. Appleman, Insurance Law and Practice, §§ 7681–7707 (1976); J. Olson, *Reinsurers' Liability to the Insolvent Reinsured,* 41 Notre Dame Law 13 (1965).

Judge Choy in *Excess & Cas. Reinsurance Ass'n v. Insurance Comm'r*, 656 F.2d 491 (9th Cir.1981). We quote:

> Reinsurance is a special form of insurance obtained by insurance companies to help spread the burden of indemnification. A reinsurance company typically contracts with an insurance company to cover a specific portion of the insurance company's obligation to indemnify a policyholder in the event of a valid claim. This excess insurance, as it is called, enables the insurance companies to write more policies than their reserves would otherwise sustain since its [sic] guarantees the ability to pay a part of all claims. The reinsurance contract is not with the insured/policyholder. When a valid claim is made, the insurance company pays the first level insured, and the reinsurance company pays the insurance company. The reinsurance company's obligation is to the insurance company, and the insurance company vis-a-vis the reinsurer is thus the insured, or more appropriately the "reinsured."

656 F.2d at 492.

Insurance guaranty associations operated in the various states provide insolvency insurance for insurance companies. The function of the guaranty association is to protect policy insureds in the extraordinary event of insurance company insolvency. Generally, the rules of the various associations are authorized by state statute and the associations are funded by the insurance companies doing business in that state. The guaranty associations assume the obligations of an insolvent insurance company, generally providing indemnification of a limited amount to the policy holders. *See* A.R.S. §§ 20–661 to –680. In Arizona and pursuant to A.R.S. § 20–667(B) the liability ceiling for a covered claim is $100,000.00.

The insurance industry is a multi-billion dollar industry and is regulated in the various states by a state insurance commissioner (director) within the department of insurance.[2] *See* A.R.S. §§ 20–101 thru –2120. As explained in *Excess and Cas. Reinsurance Ass'n:*

> [i]f an insurance company becomes insolvent, the state insurance commissioner is typically designated by statute as receiver or trustee to distribute the remaining funds of the company according to statutory priority. Thus while a guaranty association guarantees payment only to policyholders, the insurance commissioner liquidates the assets of the insolvent insurance company and distributes funds to all creditors, in order of priority.

565 F.2d at 493.

The Uniform Insurers Liquidation Act provides a comprehensive scheme for liquidating, rehabilitating, reorganizing or conserving an insolvent insurer. In addition to Arizona, 31 states have adopted this Act. California, however, has not. Under the Uniform Act, where a foreign insurer's home state has adopted the Act, reciprocity exists so that Arizona citizens are entitled to the same rights and preferences as citizens of the foreign insurer's home state. In such cases, the Arizona ancillary receiver is basically a conduit for the administration of all the assets by the domiciliary receiver. With these general concepts in mind, we now consider the factual setting of the present appeals.

## II. FACTS.

Imperial Insurance Company (Imperial) was an insurance company incorporated and domiciled in the state of California. Imperial wrote medical malpractice insurance in California, Arizona, Florida, New

---

**2.** Under the U.S. Constitution the federal government has the power to regulate insurance as part of interstate commerce. *See United States v. South-Eastern Underwriters, Ass'n.,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). However, it has expressly declined to exercise that power and has left such regulation to the states. *See* McCarran-Ferguson Insurance Reg-ulation Act, 15 U.S.C.A. §§ 1011 to 1015 (1976). In addition, and although the U.S. Constitution would support insurer-insolvency proceedings under art. 1, § 8 cl. 4 of the U.S. Constitution, Congress has declined to exercise its power to do so. *See* Bankruptcy Act, 11 U.S.C.A. § 109 (West 1979).

York, Nevada, Utah, and Alabama. Imperial at one time wrote a considerable amount of medical malpractice coverage for Arizona physicians. Imperial subsequently entered into reinsurance contracts with a number of reinsurance carriers, identified of record in the Reinsurance Memorandum filed with the trial court on August 20, 1980.

On January 10, 1978, the Superior Court of the County of Los Angeles, California, placed Imperial in receivership for liquidation and appointed appellee, insurance commissioner for the state of California, as domiciliary liquidator. In its order of liquidation, the California court issued restraining orders restraining all persons from interfering with the conduct of the liquidation in the winding up of the business of Imperial and further restraining all persons from instituting or prosecuting any action or proceedings against Imperial or its domiciliary receiver without the prior consent of the California court.

The domiciliary receiver, in furtherance of his duties as liquidator of Imperial, set July 21, 1978, as the last date for all claims to be filed against Imperial. As a result of this notice, appellant-claimants Yates, Agnew, Batchelor, Hardman, Corey, Yurk, [David and Susan] Smith and Bingham filed timely claims with the domiciliary receiver in California.[3]

Between October 1978 and September 1980, appellant-claimants Yates, Agnew, Batchelor, Hardman, Corey, Yurk, [David and Susan] Smith, Bingham and Sanchez obtained Arizona judgments against the physicians insured by Imperial. Of those nine judgments, seven were preceded by covenants not to execute against the physicians who were insureds of Imperial. Thereafter, each of those nine claimants filed a claim with the Arizona Guaranty Fund (Fund) and obtained payment of at least $99,900 against their respective judgments.

On February 1, 1980, J. Michael Low, Director of Insurance for the State of Arizona, petitioned the Maricopa County Superior Court, pursuant to A.R.S. § 20–625, for appointment as ancillary receiver of Imperial. This petition acknowledged that Imperial was in receivership in California, its domiciliary state, and was based upon the petition of ten or more Arizona residents (appellant-claimants) having claims against Imperial. On March 24, 1980, J. Michael Low was appointed ancillary receiver by the Arizona court.

By August 25, 1980, appellant-claimants Yates, Agnew Hardman, Corey, Yurk, [David and Susan] Smith, Bingham and Sanchez filed their claims with the ancillary receiver.[4] On September 16, 1980, the Arizona ancillary receiver filed his first report of claim (covering the judgment claims which had been filed on August 25, 1980) recommending approval of the claims in full, and sent out notice regarding the scheduled final hearing. Upon receipt of the notice of hearing, the California domiciliary receiver entered an appearance and

---

3. Although Sanchez failed to file a claim with the domiciliary receiver, Dr. Mills, Imperial's insured against whom Sanchez had a claim, preserved the Sanchez claim by filing with the domiciliary receiver in California. From the record before this court it cannot be determined whether appellant-claimants Musa, Worsham, Todd and [Darrell and Geanna] Smith had filed claims with the California domiciliary receiver at the time the appeal was filed in the case before us. We note from the record that at the time the trial court entered its ruling by minute entry in this case (December 23, 1980), these appellant-claimants were not before the trial court as claimants in the Arizona ancillary proceedings. These listed claimants did, in January of 1981, file claims with the ancillary receiver. The formal order of the trial court, pursuant to its previous minute entry ruling, was filed on February 12, 1981, and contained appropriate Rule 54(b) language. We express no opinion with regard to these latter claimants other than to observe that by reason of our disposition in this case their claims would be subject to administration by the domiciliary receiver in accordance with California law.

4. The Batchelor claim was filed on October 27, 1980. As previously noted, appellant-claimants Musa, Worsham, Todd and [Darrell and Geanna] Smith filed their claims with the ancillary receiver in January, 1981. They were added as parties to this appeal in the second notice of appeals, as amended, filed with this court on March 13, 1981.

filed objections to the Maricopa County Superior Court's jurisdiction in the ancillary proceedings and objections to the ancillary receiver's recommendation regarding those claims.

On November 21, 1980, appellant-claimants Yates, Agnew, Batchelor, Hardman, Corey, Yurk, [David and Susan] Smith and Bingham filed a petition for an order to show cause in the Los Angeles Superior Court challenging the domiciliary receiver's recommendation regarding their claims filed in the California receivership proceeding. On January 9, 1981, the California court issued an injunction enjoining all persons from interfering with the domiciliary receiver's exclusive right to funds recovered under any agreement or treaty of reinsurance.

On December 23, 1980, the Arizona superior court entered its minute entry order which provided: (1) that the appellant-claimants, with the exception of Sanchez, voluntarily submitted themselves to the jurisdiction of the California court, and are thus bound by actions taken by the domiciliary liquidator, and the California court; (2) that the reinsurance proceeds are not assets within the jurisdiction of the Arizona ancillary proceedings; and (3) that further ancillary proceedings are stayed in Arizona pending discovery of assets of the insolvent insurer in Arizona. The Arizona court entered its formal order on February 12, 1981. Both appellant-claimants and the Arizona ancillary receiver filed appeals which were subsequently consolidated.

III. ISSUES.

The following issues are presented on appeal:

A. Entitlement to the Reinsurance Proceeds.

Whether the trial court was correct in its determination that the Imperial reinsurance proceeds are not assets which are subject to the Arizona ancillary receivership. As a corollary, whether the reinsurance proceeds payable to an insolvent California insurer by reason of claims arising in Arizona are general assets vested solely in the domiciliary receiver in California.

B. Procedural Question.

Whether the claimants are bound to an election of remedy in the California court.

IV. DISCUSSION.

A. Entitlement to the Reinsurance Proceeds.

In the trial court, appellants contended, as they do here, that the reinsurance proceeds payable on Arizona losses are Arizona assets subject to administration in the Arizona ancillary receivership. In support of this contention they argue that Imperial obligated itself to be bound by Arizona's insurance law as a condition for its authorization by the Arizona Insurance Department to write medical malpractice coverage for the protection of Arizona patients injured by Arizona physicians. They further argue that Arizona's insurance code requires reinsurance proceeds generated by Arizona claims to be collected and administered in Arizona, as an Arizona asset by the Arizona ancillary receiver for the benefit of Arizona insureds and Arizona victims when the insolvent carrier's home state (California) is not one of the 32 states (including Arizona) which has adopted the Uniform Insurer's Liquidation Act. Appellee on the other hand contends that the reinsurance proceeds are general assets and the sole property of the domiciliary receiver. The Arizona trial court agreed with the appellee. After studying the applicable case law and Arizona statutes we conclude that the trial court was correct.

The issue of the entitlement of a domiciliary receiver in a nonreciprocal state to reinsurance proceeds traceable to claims of residents in a reciprocal state presents a question of first impression in Arizona. However, the domiciliary receiver's entitlement to reinsurance proceeds has been challenged by state guaranty funds and ancillary receivers in other states governed by the Uniform Insurers Liquidation Act. These challenges have been uniformly re-

jected by the courts on the grounds that (1) the reinsurance was treated by the domiciliary state as a general financial asset for all creditors and policyholders, not attributable to either a particular state or potential nondomiciliary claimant, and (2) the smooth functioning of interstate liquidation necessitated that all such assets be distributed through the domiciliary receiver.

In *America Re-Insurance Co. v. Insurance Comm'r of California*, 527 F.Supp. 444 (C.D.Cal.1981), reinsurers of Imperial Insurance Company (the same Imperial with which we are here concerned) brought an action for declaratory relief against appellant Arizona ancillary receiver and others. The U.S. District Court in California noted that:

> Numerous states can claim a relationship to the agreements in the present case: California, as the state of Signal/Imperial's domiciliary liquidator, and place of partial performance of the agreements; New York, as American's principal place of business, and the place of partial performance; Florida, Alabama, and Arizona, as states that have appointed ancillary liquidators or receivers for Signal and/or Imperial; California, Arizona, and Florida, as states that have insurance guaranty associations that have made claims for the direct payment of the subject reinsurance proceeds and are parties to this action; and any state where claimants or creditors of Signal/Imperial reside.
>
> An examination of the laws of California and the other affected states reveals no apparent conflict of law. However, even assuming that such a conflict were to exist, no state has a more significant relationship to the agreements and transactions in this case than California, or has an interest in applying its laws that is superior to that of California, the state of the domiciliary liquidator.

*Id.* at 451, 452. The court acknowledged the propriety of jurisdiction of ancillary receivers, but rejected the Arizona ancillary receiver's claim that reinsurance proceeds were due by reason of claims of Arizona residents against Imperial. The court stated:

> The reinsurance proceeds, under the express terms of the subject reinsurance agreements and under general insurance law, are not directly payable to Signal/Imperial's insureds and, therefore, they are not directly payable to an entity standing in the stead of those insureds. *The right to recover reinsurance proceeds is a chose in action owned solely by a ceding company such as Signal/Imperial. Reinsurance proceeds are not local assets over which ancillary receivers can exercise control* (emphasis added).

*Id.* at 454.

In *Excess & Casualty Reinsurance Ass'n, supra,* (again dealing with the same Imperial) an ancillary receiver in the reciprocal state of Florida and the liquidator of the insolvent insurer in the nonreciprocal state of California demanded payment of reinsurance proceeds. Excess, the reinsurer in the nonreciprocal state, brought an interpleader action to relieve it of its obligations under the reinsurance contract. The U.S. District Court in California awarded the reinsurance proceeds to the California statutory liquidator of the insolvent insurer, Imperial. On appeal, the Ninth Circuit affirmed the lower court and, in denying the claim of the Florida Guaranty Association, stated:

> We look first, as did the district court, to the contract. While FIGA's [Florida Insurance Guaranty Association] actions triggered Excess' obligations, the reinsurance proceeds arise from the reinsurance contract. The terms of the contract cannot be ignored in determining the proper recipient of the proceeds.
>
> Contracts are interpreted in accordance with the intent of the parties (citations omitted). The plain language of the contract indicates the intent of the parties that the reinsurance proceeds go to the receiver in the event of insolvency. In California, the California Insurance Commissioner is that receiver.

656 F.2d at 495.

 We agree with both the holdings and rationale of federal courts as ex-

pressed in *American Reinsurance Co.*, and *Excess & Casualty Reinsurance Ass'n* and similarly conclude that the reinsurance proceeds which resulted from Imperial's contracts with reinsurers and Imperial's subsequent insolvency are general assets vested solely in the California domiciliary liquidator. *See also Skandia America Reinsurance Corp. v. Barnes*, 458 F.Supp. 13 (D.Colo.1978); *Skandia America Reinsurance Corp. v. Schenck*, 441 F.Supp. 715 (S.D.N.Y.1977); *General Reinsurance Corp. v. Missouri General Ins. Co.*, 458 F.Supp. 1 (W.D.Mo.1977), *aff'd* 596 F.2d 330 (8th Cir.1979); *State of Florida ex rel. O'Malley v. Department of Ins.*, 291 N.E.2d 907, 155 Ind.App. 168 (1973).

The Arizona statutes also compel a finding that in this case the reinsurance proceeds are the sole property of the California liquidator. A.R.S. § 20–623(B) provides for the ancillary liquidation of a foreign insurer where assets of the foreign insurer are located in this state. The statute provides, in pertinent part:

> An order to liquidate the assets in this state of a foreign insurer shall require the director forthwith to take possession of the property of the insurer within this state and to liquidate it subject to the orders of the court and with due regard to the rights and powers of the domiciliary receiver, as provided in this article.

In the present case, appellants' argument that pursuant to A.R.S. § 20–501(8), the "assets" are the reinsurance proceeds which the Arizona residents are claiming, is without merit. A.R.S. § 20–501, which lists reinsurance proceeds as an asset, sheds no light on the question of entitlement to those assets upon the insurer's insolvency. Rather, that statute lists the assets which the director of insurance is to consider in assessing the financial condition of an insurer. Since we have previously concluded that the reinsurance proceeds in question were vested solely in the California domiciliary liquidator, there were no assets in this state of which the Arizona Director of Insurance could take possession.

We also reject any suggestion that an equitable lien should be judicially imposed on the reinsurance proceeds to the extent of the claims of Arizona residents. Again, we find the rationale in *Excess* instructive. In *Excess*, the guaranty association argued that the claims of its residents created an interest in the property and, therefore, it was unconscionable not to impose an equitable lien on the reinsurance proceeds for the benefit of its residents. In rejecting that claim the court stated that the guaranty association "overstates its case when it claims that it brought the fund into existence [because it] did not pay premiums ... or otherwise contribute to the disputed fund." 656 F.2d at 496. The court further noted that:

> The guaranty associations have no greater hardship claim than any other creditor.... Granting a super priority to the guaranty association would be unfair to other creditors, including, conceivably, individual policyholders.

*Id.*

We conclude that the trial court properly ruled that the reinsurance proceeds payable to the insolvent insurer by reason of claims arising in Arizona are general assets vested solely in the domiciliary liquidator in California.

### B. Procedural Question.

■ On appeal we are faced with the procedural question of whether the appellant-claimants are bound to an election of remedy in the California court. The trial court ruled that when the claimants filed their claims in the California proceedings, they "voluntarily submitted themselves to the jurisdiction of the California court" and were thereby bound by the actions taken by the domiciliary liquidator and the California courts. We affirm the trial court's ruling on this procedural question.

Appellants argue that pursuant to A.R.S. § 20–627(B) they have a statutory right to liquidate their claims in Arizona. For the following reasons, we disagree.

A.R.S. § 20–627(B) provides, in pertinent part:

> Controverted claims belonging to claimants residing in this state may either be proved in the domiciliary state as provided by the law of that state, or if ancillary proceedings have been commenced in this state, be proved in those proceedings. In the event that any such claimant elects to prove his claim in this state, he shall file his claim with the ancillary receiver and shall give notice in writing to the receiver in the domiciliary state, either by registered mail or by personal service at least forty days prior to the date set for hearing.

However, A.R.S. § 20–627(B) does not control the claims procedure in this case because, as specified in A.R.S. § 20–631, this section is part of the Uniform Insurers Liquidation Act, and California is a non-reciprocal state.

As discussed above, no assets of the insolvent insurer are located in Arizona and therefore there is no basis for appointing an ancillary receiver to liquidate the claims of Arizona residents. Therefore, the liquidation of the insolvent insurance company is controlled by the laws of the state of California. When the appellant-claimants filed their claims in the California domiciliary proceedings prior to the deadline date, they were proceeding in the proper forum. In fact, that is the only forum in which the individual claims could be filed and fully administered. This includes the Sanchez claim which was filed on Sanchez' behalf by his Arizona insured physician. Sanchez' claim was thereby preserved.[5]

### C. Full Faith and Credit.

■ We are also of the opinion that full faith and credit must be given to the California court's rulings as they relate to proceedings involving the liquidation of Imperial.

In *Moody v. State ex rel. Payne*, 295 Ala. 299, 329 So.2d 73 (1976), the Alabama Supreme Court discussed this issue. The court stated:

> This same question was raised in *Allmon v. Bookout*, Middle District of Alabama, No. 74–377–N ... and we quote [Judge Varner's] statements with approval:
>
> "It appears to be the settled rule with respect to suits in equity for the control by receivership of the assets of an insolvent corporation that the Court first assuming jurisdiction may maintain and continue to exercise that jurisdiction to the exclusion of any other court."

329 So.2d at 80. *See also Holley v. General American Life Ins. Co.*, 101 F.2d 172 (8th Cir.1939), where the Ninth Circuit Court of Appeals stated:

> It is the established rule that the liquidation of a domestic insurance company under the laws of the state of its domicile, where such laws furnish a comprehensive method for the winding up of its affairs by an officer of the state under the jurisdiction of a state, cannot be interfered with by a federal court.

101 F.2d at 174.

We also find the United States Supreme Court decision in *Underwriters Nat'l Assur. Co. v. North Carolina Life and Accident and Health Ins. Guar. Ass'n.*, 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982) to be pursuasive, if not dispositive of the case at hand. In *Underwriters Nat'l Assur.*, an insurance corporation, incorporated in Indiana (a non-reciprocal state) and doing business in North Carolina (a reciprocal state), was required to post a $100,000 deposit for the sole benefit of North Carolina policyholders. Subsequently, the Indiana Department of Insurance commenced rehabilitation proceedings against the insurance company and the court appointed the Indiana Commissioner of Insurance as rehabilitator to take possession of the business and assets of the insurance company. The Indiana Court subsequently entered an order approving a rehabilitation plan which among other things determined that Indiana had the right to the $100,000 deposited in North Carolina. In a subsequent declar-

---

5. *See* note 3, *supra.*

**434**

atory judgment action instituted in North Carolina, the North Carolina courts held that its statutes, which were the bases for requiring the posting of the deposit by the Indiana insurer, deprived the Indiana court of subject matter jurisdiction to determine rights in the $100,000 deposit. The United States Supreme Court, in reversing, found that North Carolina was obligated to give full faith and credit to the judgment of the Indiana court which had determined the rights to the $100,000 deposit. A similar situation obtains here.

In the present case, the California court on January 10, 1978, was the court to first assume jurisdiction in dealing with the insolvency of Imperial and was the court that determined Imperial's actual insolvency. In addition, California has a comprehensive statutory method for winding up an insolvent insurance company's affairs. There is no question that California properly assumed and exercised jurisdiction over Imperial. Also, on January 10, 1978, the Superior Court of California issued a restraining order which specified that all persons were enjoined and restrained from interfering with the possession, title and rights of the domiciliary receiver and from interference with the conduct of the liquidation, and all persons were enjoined from instituting or prosecuting any action or proceedings against Imperial without the consent of the California court. This order of the California court must be given full faith and credit by the Arizona courts. *Underwriters Nat'l. Assur. v. North Carolina Life.*

### V. CONCLUSION.

The trial court properly determined that the reinsurance proceeds were general assets and the sole property of the domiciliary receiver in California and that the appellant-claimants are bound by the actions taken by the California courts and the domiciliary liquidator in the processing and administration of their claims.

Accordingly, we affirm.

KLEINSCHMIT, P.J., and FROEB, J., concur.